UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIA GAMEZ )<br>  PETITIONER/PLAINTIFF )<br>v. )<br> )   **CA:**<br>MARK T. SIEGL, USCIS )<br>  Houston Field Office Director )<br>KIRSTJEN NIELSEN, SECRETARY, USDHS )<br>  RESPONDENTS/DEFENDANTS ) | |

## PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELEIF

## I. INTRODUCTION

1. Petitioner MARIA GAMEZ (Mrs. Gamez) hereby files this instant Complaint seeking declarations under 28 U.S.C. § 1331, with Administrative Procedure and Declaratory Judgment Acts: that (1) the administrative record does not support a finding that CIS does not have jurisdiction to adjudicate Mrs. Gamez' Application to Adjust Status (Form I-485) and Application for Permission to Reapply for Admission into the United States After Deportation or Removal (Form I-212); (2) that because the administrative record does not support a finding that CIS does not have jurisdiction to adjudicate Mrs. Gamez's Application to Adjust Status (Form I-485) and Application for Permission to Reapply for Admission into the United States After Deportation or Removal (Form I-212), Defendant Siegl violated Due Process in administratively closing Mrs. Gamez' application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal and informing her that she must move EOIR to reopen proceedings in order for her to be able to apply for adjustment of status; (3) that Mrs. Gamez is entitled to have her application for adjustment of status and application for permission to reapply for for admission into the United States After Deportation or Removal to be adjudicated by CIS; (4) CIS' administrative closure of Mrs. Gamez's application to adjust status and application for permission to reapply for admission into the United

1

States After Deportation or Removal served as a constructive denial of both applications; and (5) Constructive denial of Mrs. Gamez's applications was improper, her application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal should have been granted.

## II. JURISDICTION AND VENUE

2.      Jurisdiction lies under 28 U.S.C. §1331 (federal question); 28 U.S.C. §1346(a)(2) (actions against officers of the United States); 28 U.S.C. §§2201-2202 (Declaratory Judgment Act), in conjunction with 5 U.S.C. §§701-702 (Administrative Procedure Act). *See*, e.g, 5 U.S.C. §701 (definition of "agency")

3.      Venue is properly with this Court, under 28 U.S.C. §1391(e), because the Respondents are employees or officers of the United States, acting in their official capacity, and an agency of United States; because a substantial part of events or omissions giving rise to this claim occurred in the Southern District of Texas as Petitioner had her adjustment of status application administratively closed in Houston, Texas; and because Petitioner resides in the Southern District and there is no real property involved in this action.

## III. BACKGROUND

4.      Petitioner Gamez is a citizen of El Salvador who was ordered deported from the United States on or about December 29, 1994. Mrs. Gamez was subsequently granted Temporary Protected Status. She then obtained advance parole to travel outside the country and return. She last entered the United States on advance parole based on her TPS status on or about July 8, 2013. Subsequent to her entry into the United States on advance parole, Mrs. Gamez filed an application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal with the Houston Field Office of USCIS in Houston, Texas. Defendant Siegl issued a Notice of Administrative Closure to Mrs. Gamez, indicating that her applications were being administratively

closed with CIS, finding that CIS does not have jurisdiction to adjudicate the applications and that Mrs. Gamez must move EOIR to reopen proceedings in order for Mrs. Gamez to apply for adjustment of status before the Immigration Judge.

## IV. THE PARTIES

5. Petitioner MARIA GAMEZ is a citizen of El Salvador who filed an application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal. She iss a resident of Katy, Texas. Mrs. Gamez is currently in this Court's jurisdiction.

6. Respondent/Defendant Mark T. SIEGL is the duly appointed Field Office Director, Citizenship and Immigration Services (CIS), for Houston, Texas. Defendant Kirstjen NIELSEN, is the duly appointed and confirmed Secretary of Homeland Security. Defendants are sued in their official capacities only.

## V. THE FACTS

7. Mrs. Gamez is a citizen of El Salvador, who last entered the United States on or about July 8, 2013 with advance parole, granted to her based on her TPS status. (See Exhibit 1: Form I-512L)

8. Mrs. Gamez filed an application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal with the Houston Field Office of USCIS in Houston, Texas. (See Exhibit 2: Notice of Action)

9. CIS issued a Notice of Administrative Closure regarding the application for permission to reapply for for admission into the United States After Deportation or Removal, also noting that Mrs. Gamez' application for adjustment of status had been previously administratively closed. (See Exhibit 3: Notice of Administrative Closure)

10. The Notice of Administrative Closure states (emphasis added):

> After a thorough review of your application and supporting documents, unfortunately, we must inform you that we are administratively closing your application because

> USCIS does not have jurisdiction to adjudicate your Form I-212 as your Form I-485 was already administratively closed.

Said Notice also stated, id:

> USCIS reviewed your case file, A#076466140 and determined that an Immigration Judge ordered you deported/removed from the United States on 12/29/1994. It does not appear that you left the United States at that time or that the removal proceedings against you have been terminated. See 8 CFR section 245.1(c)(8)(ii). Although you were paroled into the United States on 11/2012 and on 07/08/2013 pursuant to Form I-512 issued to you based on Temporary Protected Status (TPS), you are considered upon return to be in the status you held at the time of departure, in your case an alien with an outstanding deportation/removal order. See Public Law 102-232-Dec. 12, 1991 – Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), Section 304(c)(1)(A).

Said Notice further stated, id:

> Since you are a respondent in a removal proceeding, and you are not an "arriving alien" only EOIR has jurisdiction to grant or deny your Form I-485. You must submit your Form I-485 to the Immigration Judge in EOIR proceedings. Since EOIR has already entered a removal order, you must move EOIR to reopen the proceedings in order for you to be able to apply for adjustment of status.

11. USCIS action in administratively closing Mrs. Gamez' application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal violated due process.

## V.  CAUSES OF ACTION

### A. ADMINISTRATIVE PROCEDURE AND DECLARATORY JUDGMENT ACTS

12. MARIA GAMEZ incorporates by reference the allegations of paragraphs 1-11 above.

13. As provided by 5 U.S.C. §§ 706. Scope of review

   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of the agency action. The reviewing court shall...(2) hold unlawful and set aside agency action, findings, an conclusions found to be-----(A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance or procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 if this title or otherwise review on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

14. Mrs. Gamez therefore urges the Court to "hold unlawful and set aside" the actions of the agents of Defendants Siegl and Nielsen, in finding that USCIS has no jurisdiction to adjudicate the application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal, which resulted in administrative closure of the applications.

15. In their letter to Mrs. Gamez, CIS cites to Public Law 102-232-Dec. 12, 1991 – Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), Section 304(c)(1)(A). This provision states that an alien with Temporary Protected Status who is granted permission to travel abroad temporarily will retain the same status upon their return to the country. This begs the question of what is meant by the term "status", and what "status" does Mrs. Gamez have.

16. To find the answer, we examine the intent of the legislature when enacting this law. The purpose of Public Law 102-232 was the revision of numerous technical errors found in the Immigration Act of 1990 (PL 101-649). House Report No. 102-383 at 2 (1991). That law was the most comprehensive re-write of immigration law in 66 years at the time. In light of the scope of the 1990 Act, a number of technical amendments were needed to address minor technical and grammatical errors which lead to confusion. *Id.* Thus Public Law 102-232 was enacted.

17. Concerning Section 304(c)(1)(A), House Report No. 102-383 at 7 (1991), states that an alien

provided family unity benefits or Temporary Protected Status who travels abroad with authorization does not break continuous presence for the purposes of suspension of deportation, and the aliens will be readmitted in the same status. When read contextually, term "status" as used here refers to either an alien provided family unity benefits or Temporary Protected Status, and not an "alien with an outstanding order of deportation" as interpreted by CIS.

18. "Although no specific definition of the word "status" is included in section 101 of the [INA], it is generally defined in the legal context as a "[s]tanding; state or condition," and as "[t]he legal relation of [an] individual to [the] rest of the community." Black's Law Dictionary 1264 (5th ed.1979). "Status" is a term of art, which is used in the immigration laws in a manner consistent with the common legal definition. It denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant." *In re Blancas-Lara,* 23 I. & N. Dec. 458, 460, 2002 WL 1293361 (B.I.A.2002).

19. Beneficiaries of Family Unity Program (FUP) have been found to be "admitted in any status" for cancellation of removal purposes. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1017 (9th Cir. 2006). When distinguishing why an alien with an approved I-130 is not "admitted in any status", and a FUP beneficiary is, the Court in *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1105-1106 (9th Cir. 2011) looked to the regulations. According to 8 C.F.R. Section 236.16, a beneficiary under FUP who leaves on advance parole will re-enter with the same status. *Id*. That status being a beneficiary under FUP. However, citing to 8 U.S.C. § 1182(d)(5)(A), the Court points out that this same luxury is not afforded to I-130 beneficiaries. *Id*.

20. The reason this applies to this case is because it is clear that Courts consider the concept of "status" as a "legal standing", but not just any "legal standing", one that is accounted for in the regulations. A FUP beneficiary is a "legal standing" with distinct rights. Temporary Protected Status is "legal standing" with distinct rights. An individual with an approved I-130 does not have a legal

standing as per the regulations, and neither does "alien with outstanding order of deportation". Therefore, "alien with outstanding order of deportation" is not a "status" as referred to in Public Law 102-232-Dec. 12, 1991 – Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), Section 304(c)(1)(A).

21. CIS states that Mrs. Gamez's "status" is that of an alien with an outstanding order of deportation. They base their conclusion on the following regulation, 8 CFR 245.1(c)(8), 8 CFR 245.1(c)(8)(ii). This regulation states that aliens in removal proceedings are ineligible to adjust and clarifies when removal proceedings are terminated. However this very statute indicates that removal proceedings are terminated when an alien with an outstanding order of removal departs from the United States. 8 CFR 245.1(c)(8)(ii)(A). In this case, Mrs. Gamez did depart the United States after she was granted Temporary Protected Status and left the country on advance parole. Therefore her removal proceedings were terminated.

22. An argument may be made that Mrs. Gamez did not depart the United States when she left the country on advance parole. There is case law stating that an alien who leaves the United States temporarily pursuant to a grant of advance parole does not make a departure from the United States within the meaning of section 212(a)(9)(B)(i)(II). *See, Matter of Arrabally, 25 I&N dec. 771 (BIA 2012)*. It is important to note that the holding of this case is narrow in the sense that it only applies to how a departure from the United States affects triggering of the unlawful presence pursuant to section 212(a)(9)(B)(i) of the Act. There is no statute, regulation, or case law stating that removal proceedings are not terminated when an alien departs the country pursuant to a grant of advance parole. If her removal proceedings are terminated, CIS claim that EOIR retains jurisdiction is incorrect and they wrongfully administratively closed her case.

23. 8 U.S.C. § 1255(a) states that an alien paroled into the United States may adjust their status to that of Lawful Permanent Resident. While their decision is not binding upon this court, the First Circuit Court of Appeals found that the regulation cited by CIS, 8 CFR 245.1(c)(8), is itself unlawful in that it

directly contradicts 8 U.S.C. § 1255(a). The Court states, "the statute is not silent-it defines persons who have parole status as eligible for adjustment of status and does not carve out an exception for parolees who are in removal proceedings. See 8 U.S.C. § 1255. That lack of a carve out for parolees in removal proceedings is itself significant, given that the statute contains a number of carve outs as to eligibility for adjustment of status. Some carve outs exclude persons from eligibility to apply who would otherwise meet more general eligibility requirements. Further, other carve outs create eligibility in persons otherwise ineligible. Congress thus has created a comprehensive scheme." *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005). Mrs. Gamez urges this court to adopt this view and find CIS' reliance on 8 CFR 245.1(c)(8) to be in direct contradiction to 8 U.S.C. § 1255(a).

24. CIS states that Mrs. Gamez was an alien with an outstanding order of removal prior to her leaving the country and that this statute indicates she retains this status even upon her return. This is dubious as explained above because her departure terminated her removal proceedings and EOIR's jursdiction over her case. However it is also questionable whether "alien with outstanding deportation/removal order" could be considered a "status" as used in the statute.

25. CIS interpretation of the statute contradicts INA Section 101(g) which states, "For the purposes of this Act any alien ordered deported or removed (whether before or after the enactment of this Act) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." CIS stating that "status" can include "alien with outstanding deportation/removal order" contradicts this statute which renders such a "status" impossible. Any alien returning to the United States has obviously have "left" the United States in the first place, thus they will have been removed as per 101(g). Therefore they no longer have an "outstanding" order of removal. An "alien with outstanding order of deportation/removal" cannot be construed as a valid immigration status.

26. Additionally, the INA and regulations consistently refer to immigration status as something you petition or apply for. Examples of an alien's status might include a conditional permanent resident, a refugee, an asylee, or as is the case here, temporary protected status. As stated above, this appears to have been the legislative intent behind the law cited by CIS in their letter to Mrs. Gamez. Therefore a proper interpretation of the law cited by CIS would be that, an alien under Temporary Protected Status who leaves the country pursuant to advance parole, will upon their return to the country maintain their Temporary Protected Status.

27. Mrs. Gamez urges the court to find that the administrative record on which agents of Defendants Siegl and Nielsen does not support a finding that USCIS does not have jurisdiction to adjudicate the application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal. On the basis thereof, it is urged that the Court enter an order, enjoining and restraining Defendants Siegl and Nielsen from not allowing Mrs. Gamez to continue the adjudication of her application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal.

### B. MANDAMUS

28. Petitioner MARIA GAMEZ hereby incorporates by reference the allegations of paragraphs 1-27, above.

29. In the alternative, should the Court determine that full relief cannot be afforded under the above causes of action, Mrs. Gamez asserts that she should be entitled to a writ of mandamus, ordering Respondents Siegl and Nielsen to adjudicate the application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal in her favor. USCIS decision is a constructive denial of her applications which should both be granted. She asserts that, in such a case, under the Due Process Clause of the Fifth Amendment: (1) she would have a clear right to relief, (2) the Defendants would have a clear duty to act, and (3) no other adequate remedy

would exist. *See, Samirah v. Holder, 627 F.3d 652 (7th Cir 2010) , and Sia Ass'n of Bay Area v. U.S., 849 F. Supp. 2D 916, 923-25. (N.D. Cal. 2012)*.

## VI. PRAYER FOR RELIEF

WHEREFORE, it is urged that this Court find that:

1) The administrative record on which Defendant Siegl and/or his agents administratively closed Mrs. Gamez' application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal contains insufficient evidence on which to base such finding.

2) The actions of Defendant Siegl and/or his agents in administratively closing Mrs. Gamez' application to adjust status and application for permission to reapply for for admission into the United States After Deportation or Removal were final agency action for purposes of the APA , and were arbitrary, capricious, and violated Due Process, and that the Court therefore set aside Defendant Siegl's actions in administratively closing the application to adjust status and application for permission to reapply for admission into the United States After Deportation or Removal.

3) Alternatively, should the Court conclude that full relief cannot be afforded under the cause of actions asserted, Mrs. Gamez would be entitled to a writ of mandamus under cases such as *Samirah v. Holder*, and *Shia Ass'n of Bay Are v. U.S., supra*, because:  (1) she would have a clear right to relief, to wit, that she be restored to the status of an application for adjustment of status and  permission to reapply for for admission into the United States After Deportation or Removal, which she held prior to the administrative closure of the applications, and (2) the Defendants would have a clear duty to act, by restoring her to her status, which includes vacating the decision of administratively closing the  application for adjustment of status and permission to reapply for for admission into the United States After Deportation or Removal.

It is also urged that the Court grant such other and further relief as the Court deems appropriate and just, including an award of court costs and attorney fees.

Respectfully Submitted,

  /s/ Manuel Solis  
Manuel Solis Law Firm
Attorney-in-charge
6657 Navigation Blvd.
Houston, Texas 77011
(713) 844-2997
(713) 921-7503 (fax)
email: maalejan@manuelsolis.com
Federal ID. 36113
Texas Bar 18826790